### HALL v. MILLER.
#### No. 1399.

Court of Appeal of Louisiana. First Circuit. March 4, 1935.

Breazeale & Sachse, of Baton Rouge, and Burns & Pierson, of Ponchatoula, for appellant.

John Fred Odom, of Baton Rouge, for appellee.

ELLIOTT, Judge.

Herman H. Hall alleges that Ralph R. Miller wrongfully and illegally assaulted and struck him with a lethal weapon causing him great pain and injury, and on account of which he claims of said Miller the sum of $5,000 in damages.

Ralph R. Miller, after filing an exception not necessary to consider, answered at length. In his answer he denies that he assaulted and struck the plaintiff; denies that he is responsible for the harm or injury which he sustained as alleged in his petition.

There was judgment rejecting plaintiff's demand. Plaintiff has appealed.

In what is referred to as common parlance now and then as a "free for all" which took place on the main street of the town of Denham Springs during the early part of Sunday night May 17, 1931, the plaintiff, an innocent by-stander, practically a stranger in the community, taking no part in the fight, was struck by somebody with a blunt iron instrument and badly injured. The exact time of the occurrence cannot be determined from the evidence, but it occurred between 7 and 8 o'clock p. m., and, except for some street lights which were not good, it was dark and men and objects could not be safely recognized at a distance greater than 30 or 40 feet. There were two street shows in operation in competition with each other. One of them, the Mississippi Valley Show, Inc., called by the witnesses the Ralph R. Miller Show, was located just outside the incorporated limits of the town. It had been giving daily and nightly shows for a week or so, but at the time in question the show was closed because it was Sunday night.

The other show called the Al C. Hanson Show, located just inside the incorporated limits of the town about 50 yards from the other show, had also been operating daily and nightly for some time, but was not operating at the time in question because it was Sunday night.

Due to the rivalry and competition of the shows, the employees of each were not as friendly with each other as might have been; in fact, each side had threatened the other, but until the difficulty took place in which the plaintiff was injured nothing untoward had occurred.

Our inference from the testimony is that the difficulty did not last longer than about five minutes, but several men were knocked down while it was in progress. Nobody received a serious injury except the plaintiff. The plaintiff claims that the defendant Miller followed and struck him without any cause or provocation as he endeavored to leave the scene.

The evidence shows that plaintiff is a truck farmer living 5 or 6 miles or more from Denham Springs, was not well known in the community, and had no enemies. On the Sunday evening in question, thinking that the shows would open that night and wishing to see the shows, he walked to Denham Springs, but after arriving he learned that on account of it being Sunday night neither show would open. When he found that the shows were not going to open he began to look around in the darkness for some one going in an automobile in the direction of his home so as to thereby save himself a long walk. While he stood looking around he heard a man at a distance from him of about 20 feet acost another man saying, "You have got your body guard with you." This remark was made by a man named Nettles, and was addressed to Ralph R. Miller defendant. Plaintiff testifies that Miller replied, "Get your gang," and at the same time drew from his right hip pocket what the plaintiff at the time thought was a pistol. Plaintiff started to withdraw and had walked a short distance, when, hearing a noise behind him, he turned around, and as he did so he got the first blow on his finger quickly followed by another on his cheek bone. This last blow was delivered with great force, and wounded plaintiff painfully and seriously. We are satisfied that the weapon was a blunt iron instrument of some kind; it could have been done with a hammer. The plaintiff fell to the ground unconscious under the force of the blow, and remained there until he was found after the difficulty was over, lying on the street, and was carried to the residence of a physician. The only question in the case is whether the evidence shows that this blow was inflicted by Miller. There is no other defense.

The pleadings as well as the evidence enter into discussions which we look on as extraneous, and, although issues of the kind are discussed in the briefs, we put them aside as having no bearing on the question we are called on to decide. The evidence places Miller near where plaintiff was struck. It is established that he is the party addressed by Nettles in the way stated, and that he replied to Nettles, but the testimony differs as to the language used by Miller in his reply. The plaintiff produced witnesses who testified that Miller struck the plaintiff; the defendant produced an equal number or more that he did not. On the trial plaintiff was asked:

"Q. Who hit you with that hammer? A. A man who was supposed to be Miller.

"Q. Is that man in this court room? A. Yes.

"Q. Will you point him out? A. (The witness points to Mr. Miller)."

Further answering, in another place, he testified positively that defendant Miller was the man who had struck him, but on cross-examination it was brought out that on Monday morning, the next day after the occurrence, a gentleman by the name of May, living in the vicinity, took it upon himself, as any good citizen should have done, to try to bring about a prosecution of the parties who had been engaged in the fight. Learning that plaintiff had been injured, he called on plaintiff and urged him to make an affidavit against Miller. Mr. May had reached the conclusion, in some way not developed by the evidence, that Miller was the man who had struck the plaintiff, and he called on him and urged him to have Miller arrested. On being questioned concerning the visit paid him by May and the object and purpose thereof, plaintiff was asked to say whether or not he had stated to May, when called on for the purpose, that he did not know Miller, and did not know who had struck him, and for that reason declined to sign the affidavit which he was asked to make.

Plaintiff claimed that he could not remember whether he had used such language to Mr. May or not. We have noted the question asked plaintiff about this visit made him by May and his answers thereto, and it seems to us that the plaintiff was bound to have remembered what he had said to May.

Plaintiff says that he told Mr. May, among other things, "I am not doing any talking." But we feel that plaintiff did not answer the questions asked him candidly. We give credit to the testimony of May who took the stand and testified that, when he called on plaintiff next morning after he was hurt for the purpose stated, plaintiff gave as his reason for refusing to sign an affidavit against Miller, that he did not know Miller and did not know who had hit him.

We must take into account, in connection with plaintiff's testimony at the time of the trial, that he could not remember using language to May the next morning after he was hurt, like that mentioned, the further fact that plaintiff's identification of defendant in open court as the party who had struck him was not based on what he knew of his own knowledge, but on what others had told him. Plaintiff admits this:

"Q. Is it your testimony that at the time this man struck you with his hammer you did not know who he was? A. At the time I did not.

It is clear that plaintiff's identification of the defendant on the trial of the case, as the party who had struck him, was not based on his own knowledge, but upon what he had been told by others. We therefore look to the testimony of the witnesses produced by him to prove the fact. The first witness on that subject was a man named Nettles. He is the party who had addressed Miller at the beginning of the difficulty in the way stated. He was a witness evidently biased against Miller. He at first said that he saw Miller strike plaintiff twice, and saw plaintiff fall under the blow, but almost immediately afterwards he says, "I saw Miller strike at him, I could not say that he hit him, but he was hit."

The evidence shows that Nettles was 40 or 50 feet distant from where plaintiff was standing at the time he was struck, and, although there was some street light, the evidence justifies the conclusion that the lighting was very poor and that it was difficult to recognize a man that distance in the dark. This fact tends to weaken the identification Nettles made of the defendant as the party striking the plaintiff. Then again, on the trial of the case, other matters were up against the witness Nettles which we cannot put aside, but take into account, and in doing so the testimony of Nettles is much weakened.

Mr. Annison, witness for plaintiff, testified that he saw Miller strike Hall; was positive of the fact. But Mr. Annison was distant from Hall at the time about 50 feet, and admitted that he did not know Hall at the time and did not know at the time who Miller was, but afterwards learned who he was from Nettles. The street lights were so poor that we are doubtful of a recognition at a distance of 50 feet. The testimony of Mr. Annison indicates that he had some feeling against Miller which may have influenced his identification.

Mr. E. N. Barnet, mayor of Denham Springs, testified that several of Miller's men had been arrested and fined for fighting; that a few days before or after the trial of his men, Miller called on him and asked about Hall, saying he wished to compromise with him. He directed him how to find the place where Hall lived; that Miller soon afterwards said he had called on Hall but could do nothing with him. But we find no admission on the part of Miller that he struck Hall. This is practically all the testimony produced by the plaintiff as showing that Miller is the party who struck him.

Against the fact, Miller testifies positively that he did not strike the plaintiff and took no part in the difficulty in which he was injured, but paid the fines assessed against his men engaged in the fight.

The defendant produced a number of witnesses, all his employees, who testified that he did not strike the plaintiff.

One of the employees of the Mississippi Valley Shows, Inc., testified that he saw plaintiff standing in the street, walked up, and knocked him down with his fist. We feel satisfied that plaintiff was struck with a blunt iron instrument. The testimony of the witness who claims to have done it with his fist does not establish the fact; but, be that as it may, there remains the testimony of the defendant and at least four other witnesses called by him who have testified to facts, which, if true, establish that defendant is not the man that struck the plaintiff. The plaintiff and his witnesses have not created a preponderance of proof in support of his charge against the defendant.

The judgment rendered by the lower court is, in our opinion, the proper one to have rendered in the case.

Judgment affirmed.